to happen from the notorious fact, that the best system to accomplish a given result is seldom devised at once; and if the result could not be secured by patent, the original inventor would in almost every case be deprived of the benefit from his invention by those who have no other merit but that of devising some improvement in his machinery.

2. The second general class of patents is for new modes of arriving at the old results, in which the result forms no part of the invention. In such cases, patents are for machinery only, or for other processes for arriving at results already well known; and whoever invents a new and improved process may take out a patent for it, and supersede all prior patents for machinery or processes conducive to the same result.

Morse's patents embrace both the result and the process, both being entirely new; and although other persons may invent and patent improved processes or machinery, they cannot use them during the existence of Morse's patent, to produce the same result by the same power, without license from Professor Morse or his assigns. On the other hand, it was maintained that results are not patentable directly or indirectly; that all the patents, to be valid, must be for processes or machinery only. Very numerous authorities, both American and British, were adduced on both sides to sustain their respective positions. The injunction is upon the express ground that Morse's patent covers the result as well as the process, and is nevertheless valid.

[NOTE. The case was taken, on appeal, to the supreme court, where the decree of the circuit court was affirmed, except so much as decreed that the complainants recover costs from the defendants. Accordingly, it was ordered that each party pay his own costs, both in the supreme and circuit courts. Justices Wayne, Nelson, and Grier dissented to the judgment of the court on the question of costs. 15 How. (56 U. S.) 62.]

---

MORSE (O'REILLY v.). See Case No. 10,564.

---

## Case No. 9,860.

### MORSE v. REED.

Circuit Court, D. New York. 1796.

PATENTS FOR INVENTIONS—INFRINGEMENT—PENALTY AND FORFEITURE—INJUNCTION.

[In a suit to recover the forfeiture and pecuniary penalty imposed by Act Feb. 21, 1793, § 5 (1 Stat. 322), for infringement of patent, the circuit court will also grant a perpetual injunction.]

[Cited in Livingston v. Van Ingen, 9 Johns. 537; Motte v. Bennett, Case No. 9,884; and, sub nom. Morse v. Reed, in Binns v. Woodruff, Id. 1,424.]

[Before Ellsworth, Circuit Justice.

[Nowhere reported; opinion not now accessible.]

MORSE (TILGHMAN v.). See Case No. 14,044.

MORSE (UNITED STATES v.). See Case No. 15,820.

---

## Case No. 9,861.

### MORSE & BAIN TEL. CASE.

[9 West. Law J. 106.]

Circuit Court, E. D. Pennsylvania. 1851.

PATENTS—REISSUES—ENLARGEMENT OF CLAIMS—INVENTION—INFRINGEMENT—THE MORSE TELEGRAPHIC PATENTS.

[1. As the act of 1836 (5 Stat. 117), authorizes the amendment and reissue of a patent with the "same effect and operation in law" as if the specifications had been filed at first in the form taken in the reissue, there is no reason why a second reissue may not be granted.]

[2. While the claims of a reissue cannot embrace a different subject-matter from that sought to be patented originally, yet it is competent for the patent office to grant a reissue with claims broader than in the original.]

[3. The Morse patent of 1840, relating to the electric telegraph, in all its changes, asserts his title to two distinct patentable subjects, the first founded on the discovery of a new art, the second on the invention of means for practicing it.]

[4. The Morse electrical telegraphic patents,—the first as reissued on June 13, 1848, for a magnetic telegraph; the second, as also reissued June 13, 1848, and known as the "local circuit patent"; and the third, dated May 1, 1849, known as the "chemical patent,"—*held* valid, and infringed.]

In equity.

KANE, District Judge. This case is before us on final hearing upon the pleading and proofs. Professor Morse, under whom the complainants hold, has three patents: The first dated 20th June, 1840 [No. 1,647], reissued on the 25th January, 1846 [No. 79], and again reissued on the 13th June, 1848 [No. 117]. It is called the "Magnetic Telegraph Patent." The second, dated 11th April, 1846 [No. 4,453], re-issued on the 13th June, 1848 [No. 118], referred to as the "Local Circuit Patent." The third, dated 1st May, 1849 [No. 6,420], referred to as the "Chemical Patent." The bill charges that the respondents have infringed all three of these patents; the answer denies the infringements, and controverts the validity of the patents.

The objections to the validity of the first patent, are stated in the defendants' brief, as follows: "(1) That it does not run from the date of Morse's French patent. (2) That the commissioner had no authority in law to re-issue a second time. (3) That the claims set out in the first re-issue are broader than the claims in the original patent; and the claims in the second re-issue broader than those of either of the former; and are not for the same invention."

1. The first of these objections founds itself upon the fact that Mr. Morse had obtained a patent in France for this same invention twenty-two months before his patent issued